**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

PATRICK PINKETT,                    *

Plaintiff                           *

v                                   *          Civil Action No. ELH-13-2509

TYRONE CROWDER, et al.              *

Defendants                          *
                              ***

**MEMORANDUM**

Patrick Pinkett, who is self-represented, is a Maryland prisoner currently incarcerated at the State's Eastern Correctional Institution ("ECI"). Pinkett filed suit on August 28, 2013, asserting a smorgasbord of claims pursuant to 42 U.S.C. § 1983. ECF 1. His claims include the contention that, as a parole violator, he was detained at the Maryland Reception, Diagnostic and Classification Center ("MRDCC") for an undue period, without classification, and deprived of transfer to an institution where he could earn good conduct credits and obtain other privileges.

Defendant Ricky Foxwell, Warden of the Baltimore City Detention Center ("BCDC"), has filed a motion to dismiss, which he amended (ECF 17; ECF 41), each supported by a memorandum. Defendants Tyrone Crowder, the former Warden of the MRDCC; Acting MRDCC Warden Suzanne Fisher; Major Michelle Mann; Case Management Manager Judith McCormick; and Office Secretary III Carol Tyndale, have collectively moved to dismiss or, in the alternative, for summary judgment.[1] ECF 40. Their motion is supported by a memorandum

---

[1] The Complaint initially named Wardens Crowder and Foxwell as defendants. On October 21 2013, and October 23, 2013, plaintiff added the additional defendants. *See* ECF 9, 10. The Clerk shall be directed to amend the docket to reflect the proper names of all defendants. (continued)

as well as 14 exhibits.  *See* ECF 40-1 to 40-16.[2]  Plaintiff has responded to Foxwell's motion to

dismiss (ECF 32) but has not otherwise responded.[3]

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons

that follow, the motion of defendants Crowder, Fisher, Mann, McCormick, and Tyndale,

construed as a motion for summary judgment, shall be granted.  Defendant Foxwell's motion to

dismiss shall also be granted.

## Factual Background

Pinkett advances numerous allegations.  He complains that on August 2, 2013, while

awaiting parole revocation proceedings, he was moved from MCDCC to BCDC for "no reason."

ECF 1 at 3.  Plaintiff states that while housed at MRDCC he was permitted to attend religious

services, and received haircuts, changes of clothes, medical attention, as well as access to the

telephone and his attorneys.  Further, he indicates he was able to order various hygiene items.  In

general, he maintains that the conditions of confinement at MRDCC were better than those at

BCDC.  ECF 1.

---

(footnote 1 continued)
    One of the added defendants, Judith Hemler, the Commitment Supervisor, was not
served, nor does the Attorney General represent her.  For the reasons that follow, even if she
were properly served, plaintiff's complaint against her is subject to dismissal.

    [2] For the convenience of Mr. Pinkett, references to exhibits and page numbers generally
follow those assigned by counsel for defendants, rather than the ones generated by the court's
electronic filing system.  In some instances, however, I have also included the exhibit numbers
generated by the court's electronic filing system.

    [3] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on
April 8, 2014, plaintiff was notified that defendants filed dispositive motions, the granting of
which could result in the dismissal of his case. ECF 42. Plaintiff was informed that he was
entitled to file materials in opposition to that motion within seventeen (17) days from the date of
that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit
or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the
entry of summary judgment without further notice of the court.  *Id.*

Nevertheless, according to plaintiff, in June and July 2013, while he was housed at MRDCC under the custody of Warden Crowder, his attorney was twice denied telephone access to him. Plaintiff states that after a court appearance in Salisbury, Maryland he wrote to Warden Crowder concerning his inability to receive telephone conferences with his attorney. Then, the very next day, he was moved to BCDC. *Id.*

According to plaintiff, during his first two weeks at BCDC he received only cold food. Moreover, he alleges that he did not receive a change of clothes for four weeks. He also states that the cells on the R Unit have human waste on the walls, trash in the cells, peeling paint, and mildew in the showers. In addition, he claims that the institution is infested with roaches, mice, and spiders. *Id.* Further, plaintiff states that mail was delivered at most twice a week, and some weeks he received no mail because no one retrieved it. Plaintiff suggests that his court deadlines and responses were affected. *Id.*

Plaintiff claims that on August 17, 2013, he was ordered to Cell R-21 because there was smoke/fire on the floor below. He maintains that there was haze on his floor, his cell was on the top floor, there is no circulation, and it gets very hot. *Id.* In addition, plaintiff indicates that he is a chronic care clinic patient, over 51 years of age, and his sick calls for medical care went unanswered. *Id.*

Pinkett recounts that while housed at BCDC he filed ten grievances that went unanswered. He states there is no "real grievance procedure" at BCDC. Plaintiff indicates that he wrote directly to BCDC's Warden Foxwell regarding his complaints. In plaintiff's view, while he was at BCDC he should have been afforded the same privileges granted to parole violators housed at MRDCC, such as food, exchange of clothing, mail, access to the telephone, access to the law library, safe and clean housing, and access to the courts. *Id.*

According to plaintiff, he expressed his concerns to the wardens at MRDCC and BCDC, but neither responded.  *Id*.  After approximately one month at BCDC, plaintiff was returned to MRDCC.  *Id*.  Upon his return to MRDCC, he was housed without privileges provided to other parole violators and the rest of the inmate populations.  ECF 1, 9 &10.  Plaintiff states that he remained at MRDCC for over eight weeks without being classified, nor did the commitment office calculate his sentence.  ECF 9.

Plaintiff alleges that Commitment Supervisor Judith Hemler was responsible for calculating his sentence. ECF 10.  He claims that the process of calculating his sentence should have taken approximately ten days, yet it took over nine weeks.  As a result of the delay, plaintiff claims he was denied the ability to earn good conduct credits.  Moreover, he was deprived of access to outdoor recreation and the law library.

In addition, plaintiff complains of difficulty with his Division of Correction ("DOC") identification number.  He notes that he had two different DOC identification numbers, which created problems with his mail, inmate account, and commissary purchases.  Because of the problems with his DOC identification number, plaintiff asserts that he was unable to purchase adequate hygiene items.  ECF 10.

Defendants provide the following information.   MRDCC and BCDC entered into a proposal in which pretrial disciplinary segregation inmates from BCDC would be housed at MRDCC, which is a maximum security facility, and MRDCC parole violators would be housed at BCDC.  ECF 40, Ex. 2 & 3.  The proposal was scheduled to take effect on April 2, 2012, pending approval.  *Id*.  In order to prepare for the initial movement of the disciplinary segregation inmates from BCDC, it was agreed that MRDCC would first transfer 64 parole violators.  ECF 40, Ex. 3 (ECF 40-5 at 2).  The transfer of MRDCC detainees would occur

Monday through Friday, ten detainees per day, until 64 detainees had been transferred.  *Id*. Parole violators transferred to BCDC were not permitted to take radios, televisions, or any other electronic devices with them.  *Id*.

Each week MRDCC officials were to notify BCDC of the names of parole violators scheduled for a hearing the following week.  *Id.*  MRDCC case managers were assigned as transfer coordinators and were to notify MRDCC shift commanders, as well as BCDC's traffic and transfer coordinator, of the dates and times of hearings.  *Id*.  BCDC staff were to coordinate the transfers with MRDCC's transfer coordinator.  *Id*.  (ECF 40-5 at 3).  BCDC staff were also responsible for transporting parole violaters to BCDC and for inventorying their property.  *Id*. (ECF 40-5 at 2).  MRDCC case management was responsible for insuring the parole violator list was maintained and that bed space at BCDC designated for parole violators was maintained at full capacity.  *Id*.  BCDC was responsible for MRDCC's parole violators' medical escorts and hospital watches while they were housed at MRDCC.  *Id.*  (ECF 40-5 at 3).

Upon intake at MRDCC, technical parole violators, such as plaintiff, receive a handout designed to assist them with the process.  It includes answers to frequently asked questions.  ECF 40, Ex. 4.

Plaintiff's traffic history shows that he was transported between MRDCC and ECI for court appearances between April 12, 2013 and August 1, 2013, under DOC identification number 365-174.  ECF 40, Ex. 5.  On August 2, 2013, plaintiff was transferred to BCDC as a technical parole violator under identification number 365-174.  *Id*.  Plaintiff prepared the Complaint in August 2013, while he was housed at BCDC.  Plaintiff was transferred back to MRDCC on August 26, 2013.  *Id*.

On September 16, 2013, the Central Commitment Records Center for DOC sent a memorandum to MRDCC's Traffic/ID Office regarding plaintiff's multiple identification numbers.   ECF 40, Ex. 12.   The memorandum advised that plaintiff's new identification number, 417-618, was effective July 5, 2013, and his former number, 365-174, was to be closed. *Id*.   Although housed at MRDCC since August 26, 2013, under his old DOC identification number, plaintiff was designated as "received" at MRDCC on October 3, 2013, under his new DOC identification number, 417-618.   ECF 40, Ex. 5 & 6.

On November 4, 2013, Monyette Taylor-Day, a supervisor at the Central Commitment Record Center, advised appropriate staff that plaintiff was received on October 3, 2013, under identification number 417-618. However, on October 31, 2013, plaintiff received an additional sentence and was given another identification number, 419-493.  Ms. Taylor-Day requested that this identification number (419-493) be deleted as it was issued in error.  ECF 40, Ex. 12 at 2.

Case Manager Deborah Robertson at MRDCC sent an email to staff on November 5, 2013, including Ms. Hemler, advising that plaintiff had been housed at MRDCC since March 14, 2013.  ECF 40, Ex. 12 at 3.  She noted he had a parole revocation hearing on August 26, 2013, at which time he was continued on parole under his first DOC identification number, 365-174. However, instructions had been issued to close out that number because plaintiff received an additional four-year sentence on July 5, 2013, for second-degree assault, under a new number, 417-618.  Robertson also noted plaintiff received an additional nine-year sentence under DOC identification number 417-618.  Robertson requested clarification as to which identification number was to be used to log the nine-year sentence, and so that plaintiff could be classified as quickly as possible.  *Id*.

On November 13, 2013, Robertson advised Taylor-Day, via email, that Lt. Ruffin in MRDCC's Receiving Department indicated that MRDCC could not void DOC identification numbers.  Robertson asked for clarification regarding who was responsible for closing out the most recent identification number issued to plaintiff (419-493) so that plaintiff could be transferred.  ECF 40, Ex. 7 & 12.

Plaintiff's initial security classification was prepared at MRDCC on November 5, 2013, by Case Manager Robertson.  Plaintiff was recommended for medium security and ECI was designated as the receiving institution.  ECF 40, Ex. 8.  The recommendation was approved by Assistant Warden Fisher on November 20, 2013.  *Id.*  On November 26, 2013, plaintiff was transferred to ECI and placed in general population.  Plaintiff's first classification review at ECI occurred on November 27, 2013.  *Id.*

On December 9, 2013, ECI Correctional Case Management Specialist II Robert Cook requested a copy of the State's file for Case No. 22-K-10-000249, in Wicomico County, in which Judge Kathleen Beckstead sentenced Pinkett to nine years on July 31, 2013, as well as a copy of Case Number 22-K-3-0002227, in which Judge Leah Seaton sentenced Pinkett to four years on July 5, 2013.  ECF 40, Ex. 7. Cook prepared a security screening form noting plaintiff's security level was medium and that his current commitment appeared to be his fifth major adult incarceration.  *Id.*

On February 3, 2014, plaintiff signed a Waiver of Extradition.  ECF 40, Ex. 9.  On the same date, Cook contacted Parole and Probation Agent Eric Pryor, advising that plaintiff was housed at ECI and noting that although he was eligible for pre-release status he had a parole case in "non-active/unavailable" status, a designation used by case managers and parole and probation

agents to denote there is no additional information and the case is not active for supervision, normally due to incarceration.  ECF 40, Ex. 10.

Defendants offer that the parole case arose from a sentence of six years received in the Circuit Court for Wicomico County in Case No. K-10-000249, for second degree burglary, which commenced on March 9, 2010, and from which plaintiff had been paroled.  ECF 40 at 8.[4] Plaintiff's case with Parole and Probation was opened on August 2, 2012.  Cook asked Pryor to advise him whether a warrant or detainer would be issued in the case.  *Id*.  On the same date, Cook prepared a security reclassification instrument recommending plaintiff for pre-release status and transfer to the Poplar Hill Pre-Release Unit.  ECF 40, Ex. 11.  Pryor responded to Cook's email on February 5, 2014, stating there was no warrant or detainer and the case had been revoked previously.  The case was continued and marked NAU-non-active/unavailable. ECF 40, Ex. 10.

### Standard of Review

Foxwell has filed a motion to dismiss predicated on Fed. R. Civ. P. 12(b)(6).  Such a motion tests the sufficiency of a plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  A motion to dismiss pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the claim

---

[4] Elsewhere defendants assert that the sentence was nine years in length.  *See*, *e.g.*, ECF 40 at 7.  There is a discrepancy in the defense exhibits as to the length of the sentence.  *See* ECF 40, Ex. 7; Ex. 10.  However, the Maryland Judiciary Case Search reflects the sentence was nine years in length.  *See* http://casesearch.courts.state.md.  In any event, the length of the State sentence is not material to the issues or the disposition.

showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 n.3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Id.* at 555-56 n.3 (citation omitted). But, the rule demands more than bald accusations or mere speculation. *Id.*; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Put another way, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly,* 550 U.S. at 556).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, --- U.S. ---, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010).   However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555.  Moreover, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385-86.

A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). In resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, --- U.S. ---, 132 S. Ct. 1960 (2012).  "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec.*

*Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (Citation omitted).

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

With respect to a civil rights complaint, the court "'must be especially solicitous of the wrongs alleged'" and "'must not dismiss the claim unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards*, 178 F.3d at 244 (quoting *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)) (emphasis added in *Edwards*); *see Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Nevertheless, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not

expressly incorporated therein . . . ."  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).  In considering a challenge to the adequacy of the complaint, however, the court "may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'"  *Anand v. Ocwen Loan Servicing, LLC*, --- F.3d ----, 2014 WL 2535405, at *2 (4th Cir. June 6, 2014) (quoting *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Defendants Crowder, Fisher, Mann, McCormick, and Tyndale filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  ECF 40.  As noted, their motion is supported by 14 exhibits.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U. S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).  When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are

deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration

---

[5] A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011), *aff'd*, 707 F.3d 437 (2013), *cert. granted*, 2014 WL2931839 (July 1, 2014)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to

14

a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d). But, I am satisfied that it is appropriate to address the motion of defendants Crowder, Fisher, Mann, McCormick, and Tyndale as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Discussion

### A. Exhaustion

Defendants Crowder, Tyndale, Fisher, Mann, and McCormick argue that plaintiff failed to exhaust his administrative remedies regarding his claims. ECF 40. The Prison Litigation Reform Act of 1995 ("PLRA") provides, in pertinent part, 42 U.S.C. §1997e(a):

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

As a prisoner, plaintiff is subject to the mandatory requirements of the exhaustion process. *Booth v. Churner,* 532 U.S. 731, 739 (2001). To exhaust administrative remedies within the meaning of 42 U.S.C. § 1997e(a), the inmate must properly pursue his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93-95 (2006); *see Porter v. Nussle,* 534 U.S. 516 (2002). "An inmate who begins the grievance process but does not complete it is barred from pursuing a §1983 claim under the PLRA for failure to exhaust his administrative remedies." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). In other words, a claim that has not been exhausted may not be considered by the court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Ordinarily, a prisoner's compliance with the PLRA's exhaustion requirement cannot be resolved by way of a Rule 12(b)(6) motion. This is because "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Bock,* 549 U.S. at 216. The Supreme Court's ruling in *Bock* was in accord with the "settled general rule" that "the burden of proving an affirmative defense is on the party asserting it." *McNeill v. Polk*, 476 F.3d 206, 220 n.3 (4th Cir.), *cert. denied*, 552 U.S. 1043 (2007). As discussed earlier, a Rule 12(b)(6) motion typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," unless such a defense can be resolved on the basis of the facts alleged in the complaint. *Edwards*, 178 F.3d at 243 (internal quotation marks omitted).

Consistent with these principles, the *Bock* Court stated that a prisoner suit conceivably could be dismissed under Rule 12(b)(6) for failure to exhaust administrative remedies if the "allegations in the complaint suffice to establish that ground." *Bock*, 549 U.S. at 215. But, that will be the rare case, because "the burden of pleading exhaustion in a case covered by the

PLRA" is not placed "on the prisoner." *Id.* at 211; *accord Anderson*, 407 F.3d at 682 ("While it seems unlikely that the failure to exhaust administrative remedies will often be apparent from the face of a complaint, it is certainly possible that a complaint may clearly show that an inmate has not exhausted his administrative remedies.").

Moreover, administrative remedies must be available to the prisoner, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Maryland provides inmates a grievance process that consists generally of three levels: request for administrative remedy to the Warden of the inmate's institution (commonly referred to as an "ARP"); an appeal of administrative dismissal to the Commissioner of Corrections; and submission of the grievance to the Inmate Grievance Office ("IGO"). *See Chase v. Peay*, 286 F. Supp. 2d 523, 529 (D. Md. 2003).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an administrative remedy procedure "available" to Maryland state prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or

employee[s] of the Division of Correction."  Md. Code (2008 Repl. Vol., 2011 Supp.), § 10-206(a) of the Correctional Services Article ("C.S."); *see generally* C.S. §§ 10-201 *et seq.* Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement."  Code of Maryland Regulations ("COMAR") 12.07.01.01.B(8).

In the Maryland correctional system, if the particular institution in which an inmate is incarcerated provides an internal administrative remedy procedure, the inmate must complete the ARP process as a condition precedent to further review of the inmate's grievance.  *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D.  The inmate may appeal to the Commissioner of Correction, and then may request further review by submission of a complaint to the statewide IGO.  *See* COMAR 12.07.01.05.B; *see also* C.S. § 10-206.[6]  Complaints are reviewed preliminarily by the IGO.  *See* C.S. § 10-207; COMAR 12.07.01.06.  And, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge for the Maryland Office of Administrative Hearings.  *See* C.J. § 10-208; COMAR 12.07.01.07-.08.[7]

---

[6] The IGO process is a type of *de novo* appeal.  The IGO is an agency separate from the Division of Correction within the Maryland Department of Public Safety & Correctional Services.  An inmate may submit a grievance to the IGO within the time and in the manner required by regulations of the IGO.  C. S. §§10-202, 10-206(a).

[7] A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)-(c).  In either event, the final agency determination is subject to judicial review in a Maryland state court.  *See* C.S. § 10-210.  But, an inmate need not seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement.  *See, e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, *supra,* 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo*, 286 F. 3d at 1024 (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Principally, plaintiff's complaint arises out of his transfers between MRDCC and BCDC and the delay in security classification and assignment to a particular prison. Pinkett filed numerous ARPs. He claims his efforts to file grievances regarding his classification were thwarted in that he was advised that the decision were either outside the ARP process, he had filed his complaint outside the applicable limitations period, and/or he received no response to his complaints once they were logged in. ECF 40, Ex. 13; Ex. 14; Ex. 15. Further, defendants' records indicate that some ARPs were noted as received, but are lacking in terms of what response, if any, was provided to plaintiff. ECF 40, Ex. 13 at 2; Ex. 10; Ex. 15. Plaintiff indicates he was not apprised of the grievance process when transferred to BCDC. The information sheet provided by MRDCC to technical parole providers is dated March 2014, indicating it was developed after plaintiff's transfer from MRDCC/BCDC to ECI. ECF 40, Ex. 4

at 1-2.  And, plaintiff states that, despite his efforts to pursue his complaints, his concerns went unanswered.

In light of the foregoing, and given the posture of the case, the court declines to dismiss or grant summary judgment to defendants on the ground of failure to exhaust.

### B.  *Respondeat Superior*

Plaintiff's complaints against former Crowder, Fisher, and Foxwell are based solely upon the doctrine of *respondeat superior,* which does not apply in §1983 claims.  *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit).   Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)).

Supervisory liability must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response was so inadequate as to constitute deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Plaintiff has not pointed to any action or inaction on the part of defendants Crowder, Fisher, or Foxwell that resulted in a constitutional injury.  Accordingly, his claims against them

shall be dismissed.

### C. Classification and Transfer Between Prisons

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).   In the prison context, there are two types of constitutionally protected liberty interests which may be created by government action.   The first type of liberty interest involves a state created entitlement to early release from incarceration. *See Board of Pardons v. Allen*, 482 U. S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U. S. 539, 557 (1974) (state created liberty interest in good conduct credits).   The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995).

Plaintiff has not stated a cognizable claim, as he has failed to identify deprivation of a liberty interest protected by the Due Process Clause.

Plaintiff has not identified a state statute or regulation that has mandatory language creating an enforceable expectation of a liberty interest in being classified to or remaining in a particular DOC facility.   Following the reasoning of the Supreme Court in *Sandin*, 515 U.S. 472, it is not atypical for inmates to be transferred among correctional facilities.   *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983);  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).   "[T]he ultimate determination of whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination . . . ." *Beverati*, 120 F.3d at 503 (citing *Sandin*, 515 U.S. at 485-87).

In this case, where regulations concerning transfers among facilities are of general application and contemplate routine transfers, they do not impose "atypical and significant hardship on the inmate," as defined in *Sandin*. To the extent that any written directives were not followed in terms of the time for initially classifying plaintiff, the adoption of procedural guidelines does not give rise to a liberty interest. Thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987).[8]

Likewise, to the extent plaintiff clams that the delay in his classification and/or his assignment to certain prisons prevented his ability to be assigned a prison job, his claim is unavailing. To show a civil rights violation with respect to a prison job assignment plaintiff would have to show that the actions taken against him impacted the exercise of a constitutionally protected right. Prisoners, however, do not have a constitutionally protected right to work while incarcerated, or to remain in a particular job once assigned. *See Altizer v. Paderick*, 569 F. 2d 812, 815 (4th Cir. 1978); *Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992).

Because plaintiff has not pleaded a legitimate liberty interest — a necessary element of a procedural due process claim — he has failed to state a claim concerning the delay in his classification, the transfers between DOC facilities, and/or the errors in assigning him a new identification number.

D. *Conditions of Confinement*

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).

---

[8]Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

However, conditions that are merely restrictive, or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind."

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "'the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (*quoting Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993); *see Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003). "Only extreme

deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).

Plaintiff alleges that conditions at BCDC were more restrictive than at MRDCC. He also describes unhygienic cells, vermin infestation, and lack of access to food, commissary, and hygiene items.  He has, however, neither alleged nor demonstrated any injury arising from the allegedly unconstitutional conditions of confinement.  Without injury, plaintiff's claim must fail. The discomforts, frustrations, and inconvenience experienced by plaintiff may have been unpleasant and restrictive, but they did not amount to cruel and unusual punishment.   As indicated, this conclusion is supported by the absence of physical or psychological injury resulting from plaintiff's temporary assignments at MRDCC and BCDC.

E.  *Retaliation*

To the extent plaintiff alleges he was transferred to BCDC in retaliation for having filed complaints while housed at MRDCC, his claim fails.  In order to prevail on a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

Plaintiff offers nothing in support of his claim, other than self-serving conclusory statements.  Nor does the record suggest that defendants acted in the manner alleged.  To the contrary, defendants have demonstrated that an agreement was in place between MRDCC and

BCDC to house technical parole violators such as plaintiff at BCDC while they awaited their hearing.  Plaintiff's transfer to BCDC was in accordance with this agreement.

### F.  Equal Protection

Plaintiff alleges that while housed at BCDC he should have received the same privileges regarding food, commissary, hygiene items, and property as parole violators housed at MRDCC. He also alleges that when he returned to MRDCC he should have received the same privileges as parole violators but did not, apparently due to the problems with his identification numbers.  To the extent plaintiff intends to put forth a claim that his right to equal protection has been violated by the actions of defendants, his claim fails.

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U. S. 432, 439 (1985) (citation omitted).  In cases such as this one, where no suspect criterion such as race is involved, the proper inquiry is whether the statute or regulation serves a legitimate state interest and whether the challenged classification is rationally related to it.  *See Moss v. Clark*, 886 F. 2d 686, 690 (4th Cir. 1989).   Thus, the policies in place regarding transfer of  technical parole violators to BCDC must meet a test of reasonableness.  *Turner v. Safely*, 482 U.S. 78,   (1987).

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  So long as the restrictions placed on inmates do not jeopardize the health of the inmates subjected to them, and there is a rational relationship between those restrictions and the need for protection of the inmates, equal protection is not violated.  *See Taylor v. Rogers*, 781 F. 2d 1047 (4th Cir. 1986).

Here, an agreement was reached between MRDCC and BCDC to facilitate security

within the institutions by freeing up space at MRDCC so that disciplinary segregation inmates could be housed there a maximum security facility.   In order to create space at MRDCC technical parole violators were transferred to BCDC.   When plaintiff returned to MRDCC any disruption in access to privileges such as commissary was occasioned by the error in the assignment of plaintiff's identification number and not by any specific restriction on plaintiff. Plaintiff cannot demonstrate an equal protection violation.

G.  Access to Courts

Plaintiff's claim that he was denied access to the law library, telephone contact with his attorney, and suffered delays in the handling of his mail implicates his right to access the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977) (Prisoners have a constitutionally protected right of access to the courts.)  In *Lewis v. Casey*, 518 U. S. 343, 355 (1996), the Supreme Court said:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

To state a claim based on delay or non-delivery of legal mail, a prisoner must allege adverse consequence as basis for the allegation that delay or non-delivery deprived him of meaningful access to courts.  *See Lewis*, 518 U.S. at 349*; see also Morgan v. Montanye*, 516 F.2d 1367 (2d Cir. 1975) (single interference did not violate Sixth Amendment).  "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis,* 518 U.S. at 355).  "The requirement that an inmate alleging a violation of

*Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349.

Here, plaintiff has failed to allege, much less demonstrate, actual injury as a result of any of the conduct about which he has complained.

Conclusion

Given the foregoing, the motion for summary judgment filed by defendants Crowder, Fisher, Mann, McCormick, and Tyndale will be granted.  Defendant Foxwell's motion to dismiss will also be granted.  Plaintiff's complaint against Hemler will be dismissed.   A separate Order follows.

July 18, 2014            _____/s/_____
Date                 Ellen Lipton Hollander
                   United States District Judge